United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NORTHERN CALIFORNIA GLAZIERS,
ARCHITECTURAL, METAL AND
GLASSWORKERS PENSION TRUST,
DOUGLAS CHRISTOPHER, Trustee, and
JOHN MAGGIORE, Trustee,

    Plaintiffs,

  v.

ARCHITECTURAL GLASS
CONSTRUCTION, INC.,

    Defendant.
                                   /

No. C 08-05018 WHA

**ORDER GRANTING
PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this action to recover withdrawal liability under ERISA, plaintiffs Northern California Glaziers, Architectural Metal And Glassworkers Pension Trust and its Trustees Douglas Christopher and John Maggiore move for entry of summary judgment against defendant Architectural Glass Construction, Inc., and in favor of plaintiffs. For the reasons stated below, the motion for summary judgment is **GRANTED**.

**STATEMENT**

Plaintiff Northern California Glaziers, Architectural Metal And Glassworkers Pension Trust is an employee benefit plan pursuant to ERISA. Plaintiffs Douglas Christopher and John Maggiore are members of the Board of Trustees of Trust, the "plan sponsor" under ERISA.

Defendant Architectural Glass Construction, Inc., is a corporation and an "employer" under ERISA. Defendant was a participating employer in the trust pursuant to a collective bargaining agreement with District Council No. 16, International Union of Painters and Allied Trades, Glaziers, Architectural Metal and Glass Workers Local Union 169 of Oakland, Local 718 of San Francisco, and Local 1621 of San Jose. Defendant was obligated to make contributions to the trust on behalf of its employees that were covered by a bargaining agreement (*see* Dkt. No. 21 Exh. G). In approximately August of 2005, defendant made a complete withdrawal from participation in the trust under ERISA Section 4203(b), 29 U.S.C. 1383(b). Plaintiffs allege that defendant thereby assumed withdrawal liability owed to the trust, and have filed the present motion seeking a judgment stating the same.

Plaintiffs have submitted the following evidence in support of their motion. On June 25, 2007, plaintiffs sent a letter which notified defendant of its withdrawal liability pursuant to ERISA Sections 4201–03, 29 U.S.C. 1381, *et seq.* (Dkt. No. 21 Exh. A). The letter stated that, because the fiscal year ran from July 1 through June 30, withdrawal liability would be calculated as of June 30, 2006, as required by ERISA Section 4211(b)(2)(A), 29 U.S.C. 1391(b)(2)(A).[*] The letter calculated the total withdrawal liability at $243,798.00 and specified that payments may be made in either one lump sum or in 30 quarterly installments of $10,319 each. Also, because all employees of trades or businesses under common control are treated as a single employer under ERISA, the letter requested that defendant provide a list of all trades and businesses within its control group within 30 days as required by ERISA Section 4219(a), 29 U.S.C. 1399(a)(1). Finally, this letter stated that if defendant contested withdrawal liability, defendant could appeal to the trust review board and/or demand arbitration within a certain time period following receipt of this letter.

On July 26, 2007, defendant sent a letter to plaintiffs stating that it disputed withdrawal liability and would be proceeding with the appeal procedure and arbitration (Dkt. No. 21 Exh. B). This letter also notified plaintiff that defendant was unable to make any payments because it had

---

[*] The June 30, 2006, date in this letter was actually a typo. The trust review board's letter dated February 5, 2008, clarified that the actual date on which withdrawal liability was assessed was June 30, *2005* (*see* Dkt. No. 21 Exh. E).

1  closed its business and was filing for bankruptcy. Finally, the letter stated, "there is no other
2  business within the same control group as 'Architectural Glass Construction, Inc.'"

3  On August 24, 2007, defendant sent a letter to the trust review board requesting review
4  of the assessed withdrawal liability pursuant to the trust's review procedures (*id.* at Exh. C).
5  While awaiting the trust review board's response, defendant also attempted to initiate arbitration
6  by submitting a demand to the American Arbitration Association on December 13, 2007 (*see id.*
7  at Exh. D).

8  On February 5, 2008, a letter from the trust review board denied defendant's appeal
9  regarding the imposition of withdrawal liability on the merits (*id.* at Exh. E). Finally, this letter
10  notified defendant that its prior three installment payments of $10,319 each were delinquent and
11  payment was demanded immediately for the same — $30,957, plus 8% per annum interest from
12  the due dates, liquidated damages of $6,191.40 as of January 1, 2008, and reasonable attorney's
13  fees and costs if a lawsuit became necessary to enforce defendant's obligation to pay.

14  On September 2, 2008, the arbitrator filed its findings in response to defendant's request
15  for arbitration (*id.* at Exh. F). The arbitrator did not make a decision on the merits, but dismissed
16  defendant's demand for arbitration as untimely per ERISA's set arbitration procedures.
17  Defendant was ordered to pay all arbitration fees and costs.

18  Plaintiff alleges that defendant still refused to make payments on its withdrawal liability
19  obligations and likewise failed to provide plaintiff with the list of members in its control group.

20  The complaint was filed on November 4, 2008 (Dkt. No. 1). Plaintiffs alleged that
21  defendant had subsequently failed to cure its delinquency within 60 days, as required under
22  ERISA, and was now in "default" under ERISA Sections 4219(c)(5) and 4001(b)(1), 29 USC
23  1399(c)(5) and 1301(b). The trust agreement defines "default" to include, *inter alia*, "[t]he failure
24  of an Employer to make, when due, any payment under this paragraph, if the failure is not cured
25  within sixty (60) days after the Employer receives written notification from the Joint Board of
26  such failure" (Dkt. No. 21 Exh. G at 11). Plaintiffs sought a money judgment for the entire
27  amount of outstanding withdrawal liability ($243,798), plus accrued interest at 8%, liquidated
28  damages at 20%, and attorney's fees and costs pursuant to ERISA Sections 4301(b) and 502(g),

3

29 U.S.C. 1301(b) and 1132(g)(2). Plaintiff also sought injunctive relief ordering defendant to provide documentation of all trades or businesses within its control group as defined in ERISA Section 4001(b)(1), 29 U.S.C. 1301(b).

Defendant subsequently filed an answer to the complaint (Dkt. No.7).

On October 2, 2009, plaintiffs filed a motion for summary judgment (Dkt. No. 20). Plaintiffs seek summary judgment against defendant for the following: (1) withdrawal liability of $243,798; (2) plus interest of $41,512; (3) liquidated damages of $48,760; (4) attorney's fees of $17,755; and (5) costs totaling $530 — for filing fees of $350, service of process fees of $115, messenger fees of $57, and court parking fees of $8 — for a grand total judgment of $352,355. These damages are likewise outlined in the trust agreement, which states that in the event of delinquency, interest on delinquent payments, liquidated damages, and payment for attorney's fees and costs will be due, and explains the method for computing statutory withdrawal liability (*see* Dkt. No. 21 Exh. G at 5–7, 9–12). The Withdrawal Liability Procedures for the Trust, adopted by plaintiffs, also set forth these procedures as consequences for delinquency (*see id.* at Exh. I). Plaintiffs have also submitted a chart calculating the interest due under the trust agreement terms based on defendant's various alleged delinquencies (*id.* at Exh. H). Plaintiffs' motion states that, because defendant is in default, all damages are *immediately* due in accordance with the Withdrawal Liability Procedures (*see id.* at Exh. I). Also, because defendant failed to follow the proper appeal procedures set forth under ERISA, plaintiffs contend that defendant has now forfeited the right to challenge the amount of assessed withdrawal liability. Finally, plaintiffs' motion again states that defendant must provide the information regarding the control group members immediately.

On October 19, 2009, due to defendant's failure to respond to plaintiffs' motion, an order to show cause issued ordering defendant to respond and show cause for its failure to respond to the motion in accordance with Civil Local Rule 7-3(a) or alternatively to file a statement of nonopposition to the motion as required by Civil Local Rule 7-3(b) (Dkt. No. 23).

On October 19, 2009, defendant filed a statement of nonopposition to the motion in accordance with Civil Local Rule 7-3(b) (Dkt. No. 24).

4

On October 29, 2009, plaintiffs filed a motion requesting an order for entry of summary judgment without hearing (Dkt. No. 27).

**ANALYSIS**

Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). The burden placed on the respective parties is as follows:

> [I]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrates the absence of any genuine issues of material fact, then the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. . . . The standard for judging either a defendant's or plaintiff's motion for summary judgment is the same standard used to judge a motion for a directed verdict: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Musik v. Burke*, 913 F.3d 1390, 1394 (9th Cir. 1990). Moreover, in order to prevail, the party opposing the motion must present *evidence* that sets forth a genuine issue of material fact:

> [The party] opposing summary judgment may not rest on their pleadings. Fed. R. Civ. P. 56(e). Although reference is made to the moving party's "burden" under this rule, Rule 56 places no evidentiary burden on a moving [party] beyond that which is required for him to prevail at trial. Therefore, while it is incumbent upon the adverse [party] to offer evidence sufficient to raise a genuine issue of fact on an issue on which the [adverse party] has the burden of proof, the moving [party] need provide nothing more than a reference to those materials on file in the case which support the movant's belief that there is an absence of any genuine issues of material fact.

*Ibid.*

In the present action, defendant did not present evidence to set forth a genuine issue of material fact — rather, defendant simply filed a statement of nonopposition. As a result, this order need only determine whether plaintiffs have submitted evidence to show that there is no genuine issue of material fact for trial.

**1. DEFENDANT CANNOT NOW CONTEST THE WITHDRAWAL LIABILITY ASSESSMENT.**

Plaintiffs first state that defendant failed to follow the proper procedures established for challenging the amount assessed for withdrawal liability, and therefore has forfeited its right to now do so. The procedures cited by plaintiffs appear in 29 U.S.C. 1399(b)(2)(A) and 1401(a)(1)(A).

Section 1399(b)(2)(A) states:

> (A) No later than 90 days after the employer receives the notice [of the amount of withdrawal liability assessed], the employer—
>
> (i) may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments,
>
> (ii) may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and
>
> (iii) may furnish any additional relevant information to the plan sponsor.

Section 1401(a)(1)(A) states:

> (1) Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 4201 through 4219 [29 USCS §§ 1381–1399] shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60-day period after the earlier of—
>
> (A) the date of notification to the employer under section 4219(b)(2)(B) [29 USCS § 1399(b)(2)(B)], or
>
> (B) 120 days after the date of the employer's request under section 4219(b)(2)(A) [29 USCS § 1399(b)(2)(A)].

As stated, in the present case, defendant complied with the requirements of Section 1399(b)(2)(A). But defendant did not comply with the requirements of Section 1401(a)(1)(A), as found by the arbitrator on September 2, 2008, when it determined that the request for arbitration was untimely (*see* Dkt. No. 21 Exh. F). Indeed, Section 1401(c) states that "[i]n any proceeding under subsection (b), there shall be a presumption, rebuttable only by a clear preponderance of the

evidence, that the findings of fact made by the arbitrator were correct." As a result, defendant is subject to Section 1401(b)(1), which states:

> If no arbitration proceeding has been initiated pursuant to subsection (a), the amounts demanded by the plan sponsor under section 4219(b)(1) [29 USCS § 1399(b)(1)] shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

In sum, defendant is obligated to pay the amounts due and owing in accordance with the schedule set by plaintiffs. *See Board of Trustees of the Western Conference of Teamsters Pension Trust Fund v. Arizona-Pacific Tank Lines*, No. C 83 0317 AJZ, 1983 U.S. Dist. LEXIS 12709, at *2–3 (N.D. Cal. Oct. 14, 1983) (Zirpoli, J.) ("If the employer fails to make payment when due, and fails to cure the delinquency within 60 days of notice of the delinquency, the plan sponsor is entitled to obtain immediate payment of the entire amount of the employer's outstanding withdrawal liability. 29 U.S.C. § 1399(c)(5)").

The Ninth Circuit has likewise recognized the primacy of arbitration in such disputes. In *Teamsters Pension Trust Fund-Board of Trustees of the Western Conference v. Allyn Transportation Co.*, 832 F.2d 502, 504 (9th Cir. 1987) (citations and quotation marks omitted; emphasis in original), the Ninth Circuit upheld summary judgment granted in favor of the trust for withdrawal liability because the employer had failed to initiate arbitration within the statutory period, stating:

> [B]y the express terms of § 1401(a)(1) *any* dispute over withdrawal liability as determined under the enumerated statutory provisions *shall* be arbitrated. . . . [A]rbitration is the initial stage of the dispute resolution process established by the statute, . . . judicial consideration is to follow, and . . . it is to take the form of a proceeding to enforce, vacate or modify the arbitrator's award. . . . Congress was dissatisfied with collection procedures that resulted in lengthy, costly and complex litigation; provisions for informal, expeditious resolution of withdrawal liability disputes were at the heart of the MPPAA; and the value of arbitration in fulfilling Congress' intent to provide an efficient, expeditious dispute resolution mechanism lies in initial resort to that mechanism.

7

The Ninth Circuit in *Teamsters Pension Trust Fund* relied upon *I.A.M. National Pension Fund, Plan A, A Benefits v. Clinton Engines Corp.*, 825 F.2d 415, 416–17 (D.C. Cir. 1987), which interpreted the language of the applicable ERISA statutory scheme as follows:

> Within 90 days of notification, the employer may request that the sponsor review its determination. *Id.* § 1399(b)(2)(A). If either party is dissatisfied with the outcome of this review, Congress mandates arbitration. The operative statutory language is as follows: "Any dispute between an employer and the plan sponsor of a multiemployer pension plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." *Id.* § 1401(a)(1). Thus, Congress' directive is clear. *Any* dispute over withdrawal liability as determined under the enumerated statutory provisions *shall* be arbitrated.

Other courts have also held that "[f]ailure to initiate arbitration within the statutory time period operates as a waiver of arbitration, thereby fixing the withdrawal liability and foreclosing any challenge to its imposition." *Bowers v. Greenpoint Warehousing & Distribution Services, Inc.*, No. 91 Civ. 3784 (TPG), 1992 U.S. Dist. LEXIS 6599, at *4 (S.D.N.Y. May 5, 1992) (citing *ILGWU National Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 881-82, 887 (2d Cir. 1988), and *Bowers v. Transportation Maritima Mexicana, S.A.*, 901 F.2d 258, 263 (2d Cir. 1990)).

Defendant has failed to raise any genuine issue of material fact as to the matters discussed above. As a result, this order finds that, in accordance with the terms of Section 1401(b)(1), defendant is obligated to pay the amounts due and owing in accordance with the schedule set forth by plaintiffs.

**2. DEFENDANT IS IN DEFAULT.**

As stated, the trust agreement defines "default" to include, *inter alia*, "[t]he failure of an Employer to make, when due, any payment under this paragraph, if the failure is not cured within sixty (60) days after the Employer receives written notification from the Joint Board of such failure" (Dkt. No. 21 Exh. G at 11). The trust agreement's definition is in accordance with that stated in 29 C.F.R. 4219.31(b)(1), which states that "default" is defined as:

> (i)   The failure of an employer to pay any overdue withdrawal liability payment within 60 days after the employer receives written notification from the plan sponsor that the payment is overdue; and

8

   (ii) Any other event described in rules adopted by the plan
which indicates a substantial likelihood that an employer
will be unable to pay its withdrawal liability.

Defendant was notified by plaintiffs that payment was overdue on February 5, 2008. Both parties agree that defendant has since failed to pay any overdue withdrawal liability payments, and more than 60 days have passed since defendant received the February 5, 2008, notification. Therefore, defendant is in "default."

### 3. THE FULL AMOUNT OF WITHDRAWAL LIABILITY, PLUS INTEREST, LIQUIDATED DAMAGES, AND REASONABLE ATTORNEY'S FEES AND COSTS ARE DUE IMMEDIATELY.

29 C.F.R. 4219.31(b)(2) states that, "[i]n the event of a default, a plan sponsor may require immediate payment of all or a portion of the outstanding amount of an employer's withdrawal liability, plus interest." Plaintiffs have demanded immediate payment of the entire outstanding amount on two occasions — *first*, on November 4, 2008, when the complaint was filed (Dkt. No. 1), and *second*, in the present motion filed October 1, 2009 (Dkt. No. 20).

Moreover, 29 U.S.C. 1451(b) states: "In any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 515 [29 USCS § 1145])." Furthermore, 29 U.S.C. 1145 states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

As stated, defendant's contributions owed under Section 1145 are delinquent.

Finally, 29 U.S.C. 1132(g)(2) sets forth the damages that are to be recovered by the plan in such an action (emphasis added):

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 [29 USCS § 1145] in which a judgment in favor of the plan is awarded, the court *shall* award the plan—
>
>  (A) the unpaid contributions,
>
>  (B) interest on the unpaid contributions,

9

|     |     |     |     |
| --- | --- | --- | --- |
|     | (C) |     | an amount equal to the greater of— |
|     |     | (i) | interest on the unpaid contributions, or |
|     |     | (ii) | liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), |
|     | (D) |     | reasonable attorney's fees and costs of the action, to be paid by the defendant, *and* |
|     | (E) |     | such other legal or equitable relief as the court deems appropriate. |

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986 [26 USCS § 6621].

When an employer is found liable for delinquent contributions, an award of the unpaid contributions, interest, liquidated damages, and reasonable attorney's fees and costs is *mandatory*. *See Northwest Administrators, Inc., v. Albertsons, Inc.*, 104 F.3d 253, 257–58 (9th Cir. 1996); *Teamsters Pension Trust Fund*, 832 F.2d at 507.

Plaintiff seeks the following award of damages: (1) withdrawal liability of $243,798; (2) interest of $41,512; (3) liquidated damages of $48,760; (4) attorney's fees of $17,755; and (5) costs for filing fees of $350, service of process fees of $115, messenger fees of $57, and court parking fees of $8 — for a grand total judgment of $352,355.

As discussed previously, pursuant to Section 1401(b)(1), plaintiffs are owed the full amount of their assessed withdrawal liability on a payment schedule that they find appropriate. As stated, plaintiffs have demanded the full amount of withdrawal liability immediately, so $243,798 in withdrawal liability will be awarded.

The amount of interest requested was calculated using the rate chart provided under the plan (*see* Dkt. No. 21 Exh. H), per the requirements of Section 1132(g)(2). Therefore, $41,512 in interest will be awarded..

As for the liquidated damages amount, 29 U.S.C. 1132(g)(2)(C)(ii) states that the amount of liquidated damages that may be awarded shall not exceed 20 percent of the requested

10

withdrawal liability amount. Plaintiffs request $48,760 in liquidated damages. But 20 percent of $243,798 is actually $48,759.60. Per Section 1132(g)(2)(C)(ii), this order has no authority to grant an amount in excess of $48,759.60. Because the trust agreement authorized an award of the full 20 percent in liquidated damages (*see* Dkt. No. 21 Exh. G at 5), $48,759.60 in liquidated damages will be awarded.

The requested amount for costs is $530. The requested costs appear reasonable, therefore plaintiffs will be awarded $530 in costs.

Plaintiffs request $17,755 in attorney's fees. But plaintiffs' counsel bases this request on only the following (Dkt. No. 21):

> 23. I personally have spent 12.9 hours during March 27, 2008 through June 30, 2008 and 71.9 hours during July 1, 2008 through October 1, 2009, during which time my billing rate was $180 per hour through June 30, 2008 and $185 per hour beginning July 1, 2008, thereby making reasonable attorney's fees incurred by me in connection for a with [*sic*] this action $16,919.
>
> 24. I am informed and believe that a paralegal with this firm spent a total of 7.6 hours on this action when her time was billed at the rate of $110 per hour, thereby making reasonable attorney's fees incurred by a paralegal in connection for a with [*sic*] this action $836.
>
> 25. The reasonable attorneys' fees incurred by Plaintiff Trust through October 1, 2009, as set forth above totals $17,755.

The Ninth Circuit has stated that reasonable attorney's fees under Section 1132(g)(2) *may* include the costs incurred separately by both attorneys and their support staff. *See Trustees of the Construction Industry & Laborers Health & Welfare Trust v. Summit Landscape Cos., Inc.*, 460 F.3d 1253, 1256–57 (9th Cir. 2006). But plaintiffs' counsel has failed to explain why the requested rate and time spent is *reasonable*. Indeed, the Ninth Circuit has stated that in determining whether the requested fees are reasonable, this order may:

> [I]nsist that the Joint Trustees show that it is the custom in the relevant community to bill separately for work performed by the non-attorneys at issue, and that the Joint Trustees "produce[] satisfactory evidence, in addition to the affidavits of [their] counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987).

11

1  *Ibid.* Additionally, the requested attorney's fees, based upon the hours worked and the requested
2  rate, do not add up accurately. Plaintiff states that the amount earned in paragraph 23 above,
3  based on the hours worked at the hourly rate specified, was $16,919. In fact, 12.9 hours billed at
4  a rate of $180 per hour comes to $2,322, and 71.9 hours billed at a rate of $185 per hour comes to
5  $13,301.50 — for an actual total of $15,623.50. The requested amount in paragraph 24 above
6  for the paralegal's work accurately adds up. Therefore, the total requested amount in paragraph
7  25 above, based on these figures, should actually be $16,459.50, and not $17,755 as requested
8  by plaintiffs.

9       Due to these evident mistakes and the failure of plaintiffs' counsel to specify why the
10  requested amount is reasonable, this order will reserve judgment on the full amount of attorney's
11  fees awarded until plaintiffs' counsel submits an accurate accounting of the hours worked in this
12  case, the hourly rate applied, the grand total of requested attorney's fees, and an explanation as
13  to why the requested amount is reasonable.

14       In sum, the following amounts will be awarded: (1) withdrawal liability of $243,798;
15  (2) interest of $41,512; (3) liquidated damages of $48,759.60; and (4) costs of $530 — for a
16  current total of $334,599.60. Plaintiffs are ordered to file with this Court a submission detailing
17  an accurate accounting of the hours worked in this case, the hourly rate applied in this case, the
18  grand total of requested attorney's fees, and an explanation as to why the requested amount is
19  reasonable by **THURSDAY, NOVEMBER 12, 2009**. The amount of attorney's fees to be awarded
20  will be determined after plaintiff files the requested submission.

21      **4.  DEFENDANT MUST PROVIDE PLAINTIFFS WITH INFORMATION CONCERNING MEMBERS OF ITS CONTROL GROUP.**

22  Plaintiffs renew their request for information regarding members of defendant's control
23  group. Indeed, 29 U.S.C. 1301(a)(14) states that all businesses under common control with
24  defendant are treated as a single employer such that each is liable for the entire assessed
25  withdrawal liability plus the allowable interest, liquidated damages, and attorney's fees and costs.
26  But defendant's letter dated July 26, 2007, disputing withdrawal liability and stating that
27  defendant would be proceeding with the appeal procedure and arbitration, also stated that "there
28  is no other business within the same control group as 'Architectural Glass Construction, Inc.'"

(*see* Dkt. No. 21 Exh. B). Plaintiffs have not submitted any evidence to show that plaintiffs even acknowledged or responded to this statement.

Nevertheless, plaintiffs have submitted a list of documents and information that they believe may lead to other relevant information that may be needed to determine whether there are other persons or entities that are part of a control group with defendant (*see id.* at Exh. J). Therefore, defendant is ordered to evaluate the documents and information listed on Exhibit J to the declaration of Kristen McCulloch in support of plaintiffs' motion and reconsider whether there are any other persons or entities within defendant's control group, in accordance with Section 1301(a)(14). Defendant is ordered to respond to plaintiffs' request for information regarding the members, if any, of defendant's control group by filing a written submission as to the same with this Court by **NOON ON THURSDAY, NOVEMBER 19, 2009**.

## CONCLUSION

For the reasons stated above, the motion for summary judgment is **GRANTED**. Defendant is ordered to immediately pay a money judgment in the amount of $334,599.60 for the following: (1) withdrawal liability of $243,798; (2) interest of $41,512; (3) liquidated damages of $48,759.60; and (4) costs of $530. Plaintiffs are ordered to file with this Court a submission, no longer than five pages, detailing an accurate accounting of the hours worked in this case, the hourly rate applied in this case, the grand total of requested attorney's fees, and an explanation as to why the requested amount is reasonable by **THURSDAY, NOVEMBER 12, 2009**. The amount of attorney's fees to be awarded against defendant will be assessed after plaintiffs file the requested submission. Finally, defendant is ordered to respond to plaintiffs' request for information regarding members, if any, of defendant's control group by filing a written response with this Court by **NOON ON THURSDAY, NOVEMBER 19, 2009**.

**IT IS SO ORDERED.**

Dated: November 5, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE